OPINION
{¶ 1} Quintin McCain appeals from his conviction on one count of aggravated robbery in violation of R.C. 2911.02(A)(2).
 {¶ 2} The facts underlying the appeal are set out in the Appellant's brief and are as follows: *Page 2 
 {¶ 3} On August 24 and August 26, 2007, two robberies occurred in two nearby buildings in an apartment complex at 1209 and 1201 Linda Vista Avenue in Dayton. On these two days, two different pizza delivery drivers were delivering orders to the two apartments when they were each robbed by a masked assailant.
 {¶ 4} On August 24, Roger Flannery was delivering an order for Cassano's Pizza. When he arrived at 1209 Linda Vista, he was asked to step inside the door into a poorly lit stairwell. Once inside the stairwell, a man wearing a hat covering his head and a bandanna covering his face from the nose down, pointed a semi-automatic hand gun at Flannery and asked him to leave the food there and hand over the contents of his pockets, including his wallet, which he did. The police later presented Flannery with a photo lineup, but Flannery was only able to identify his assailant as a large, black male, holding a semiautomatic handgun.
 {¶ 5} On August 26, Philip Parks was delivering an order for Florintino's Pizza. He arrived at 1201 Linda Vista, and was asked to step inside the door into the stairwell. Once inside the stairwell, a man with a bandanna covering his face from the nose down pointed a semi-automatic hand gun at Parks and instructed him to leave the food and hand over the contents of his wallet, which he did. Parks left very quickly and called the police on his cell phone. Parks later identified the Defendant, Quinten J. McCain, aka T.J. McCain, as the perpetrator from a photo lineup. (Tr. at 96-124.)
 {¶ 6} Although several witnesses who were at the Linda Vista apartment complex on the 24th and 26th testified that McCain was on the premises and gave them food from the two pizza delivery orders, no firearm or stolen property was ever found on McCain's person. Dayton police officers obtained consent to search one of the *Page 3 
apartments, where they found remnants of the food and a semi-automatic .380 pistol. Flannery and Parks, the victims of the robberies, identified the handgun as the one used to rob them. Other witnesses from the apartment complex identified photographs of remnants of the food they testified McCain gave them on the 24th and 26th. (Tr. at 124-182.) Three days before the robberies, McCain had been stopped by police for a traffic violation and his vehicle was towed. Police recovered a partially-full box of Winchester .380 caliber ammunition.
 {¶ 7} McCain's sister, Qkeisha McCain, testified that she was with McCain having a barbecue and watching movies at her apartment and then at his apartment, miles away from Linda Vista Avenue, during much of the time the robberies were alleged to have taken place. She testified that McCain's girlfriend, Antoneria Carter, was with them on Sunday the 26th at McCain's apartment. (Tr. at 333-355.)
 {¶ 8} The week before trial, McCain's counsel attempted to serve a subpoena on Antoneria Carter, whom he acknowledged was an additional alibi witness. Defense counsel apparently perfected residential service by having a copy of the subpoena left at Ms. Carter's residence in the midst of the two-day trial, with the help of the Montgomery County Sheriff. Ms. Carter did not appear at the trial, however, despite efforts by the Sheriff's Department to find her and have her appear. The deputies made several trips to Ms. Carter's residence during the evening and early morning hours of the two-day trial to attempt service of the subpoena. McCain's counsel asked the court not to have police arrest Ms. Carter because she was then pregnant with McCain's child. Defense counsel also apparently did not request a material-witness warrant from the court, although this was suggested by the prosecutor during a bench conference. No affidavit *Page 4 
was obtained from Ms. Carter and no proffer of evidence was made by McCain's counsel. The defendant did not testify in his own defense. At the conclusion of the trial, the jury found McCain guilty of only one count of aggravated robbery. McCain raises three assignments of error in this appeal.
 {¶ 9} In his first assignment, McCain asserts the indictment was defective because the indictment did not allege a culpability state for the crime of aggravated robbery. In support of his argument, McCain cites the case of State v. Colon, 118 Ohio St.3d 26. In that case, the supreme court held that an indictment charging aggravated robbery under R.C. 2911.02(A)(2) must contain the culpability state of recklessness as it applies to the "physical harm" element of the offense. The Ohio Supreme Court has held in State v. Warf, 86 Ohio St.3d 375 that the deadly weapon element of aggravated robbery as provided in R.C. 2911.01(A)(1) is a strict liability element. In State v. Colon,119 Ohio St.3d 204 (Colon II), the Supreme Court confined Colon I to its facts in that case where the lack of the culpability state "permeated" the proceedings. In this case, the prosecutor did not argue at any point that the theft element of the aggravated robbery charge did not require the culpability state of "knowingly." Also, the indictment does refer to the theft offense as defined in Section 2913.01(K) of the Revised Code. That section requires the element of knowingly. The indictment was not defective. The Appellant's first assignment is Overruled.
 {¶ 10} In his second assignment, McCain asserts that his trial counsel was constitutionally ineffective. He asserts that his trial counsel was ineffective in failing to secure the presence of Antoneria Carter as an alibi witness for McCain by having a material-witness warrant issued for her. *Page 5 
 {¶ 11} The State argues we should reject McCain's argument in this regard because we cannot determine whether a reasonable likelihood exists that the outcome of McCain's trial would have been different without knowing what Ms. Carter would have testified to at trial.
 {¶ 12} We have examined the record and McCain's counsel represented to the court that Ms. Carter probably left the address where residential service of the subpoena was made. Counsel contacted Ms. Carter's sister and mother and neither knew the whereabout of Ms. Carter (Tr. 387.) It does not seem likely that a material-witness warrant would have successfully obtained Ms. Carter's appearance for trial. In any event, we agree that we cannot determine the prejudice that resulted from Ms. Carter's failure to testify from the trial record. See Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052.
 {¶ 13} Secondly, McCain asserts that his trial counsel asserts his counsel was ineffective for not raising the alleged "defect" in the indictment. Having determined in the first assignment that the indictment was not defective, this argument must fail as well. The second assignment is Overruled.
 {¶ 14} In his third assignment, McCain argues that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. This assignment is also without merit. Philip Parks identified McCain as the man who robbed him. Amber and Kenneth Brooks testified that McCain offered them pizza from Florintino's Pizza shortly after the robbery. They also said he was in their apartment when the handgun was later recovered. There is no evidence the jury lost its way in convicting McCain. See State v. Thompkins (1997), 78 Ohio St.3d 380. A rational juror *Page 6 
could believe the State's evidence and convict McCain under the reasonable-doubt standard. State v. Jenks (1991), 61 Ohio St.3d 259. The Appellant's third assignment of error is Overruled.
 {¶ 15} The judgment of the trial court is Affirmed.
DONOVAN, P.J., and FAIN, J., concur. *Page 1